NUNC PRO TUNC
9/17/2021

FILED

Sep 24 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ zenobiaa        DEPUTY

| | |
|---|---|
| **JOHN JOSEPH WHITTINGTON JR -THE VESSEL** | **Cause No: 21-CV-1224-DMS-JLB** |
| **John Joseph Whittington Jr Executor/Beneficiary of – THE VESSEL** | |
| Claimant, | **AFFIDAVID OF TRUTH (TO BE TREATED AS A CLAIM SWORN IN WRITTING)** |
| **LISA DEINES, JENNIFER ROSE, PRISCILLA VILLAFANA, CAITLIN MARTIN JONES ZABACK, BROWDER ALPHONSO WILLIS III, LAYANIE L. JOHNSON, GARY MICHAEL BUBIS,** | |
| Wrongdoer(s) | |

## In The Whittington Court

## at said court at 333 W Broadway #420, San Diego, CA  92101

### AFFIDAVIT OF TRUTH

Comes Now a man John of the Whittington Family executor / beneficiary of - THE VESSEL, the affirming that I am of sound mind, competent, a living man that obeys the all mighty creator God and Gods Law. I John a lawful abiding living man of the California Republic not the STATE OF CALIFORNIA in all caps which is in fact a private corporation under corporate bylaws. A man who is a full sovereign not a sovereign citizen. To be more detailed a State National with limited diplomatic immunity as seen in my AFFIDAVIT OF TRUTH AND ASSERTORY OATH, REPUDIATION AND REVOCATION OF CITIZENSHIP I am a man who is only moved by God not a sovereign citizen movement. A State National is equivalent to a blood line native see title 8 U.S.C § 1101 (a) (21) & (23). I have the right to self-determination and what I want my status to be is perfectly capable in writing this AFFIDAVIT OF TRUTH.

### Statement of Fact

Lisa Deines, Jennifer Rose, Pricilla Villafana, Caitlin Martin Jones Zaback, Browder A Willis III, Layanie L Johnson, and Gary M Bubis herein known as the Wrongdoer(s) have forever

waived any claim of proper service to them.  (Mtn to dismiss @1:28 (fn)). The Wrongdoer(s) filed a Motion to Dismiss FAC with Prejudice. I John of the Whittington family herein known as the claimant denies each false claim, arguments, and any false claims put forth by the Wrongdoer(s) motion. I have been done wrong by the wrongdoer(s). Claimant contends that:  1) The complaint/claim amply contained and shows that sufficient factual matters were stated on the court of record, and the complaint/claim also stated many claims for relief that are plausible on its face. Claimant's complaint/claim not only contains legal conclusions as the framework of the claimant's complaint/claim, but he also supported the legal conclusions by backing them up with factual and a real claim against the wrongdoer(s).  Therefore, the wrongdoer(s) argument that this Court is free to ignore claimant's legal conclusions must fail, due to the conclusions are well supported.  When viewed in its totality, claimant has sufficiently said to the court of record that the claimant's Due Process was violated every step of the way. claims to overcome the wrongdoers(s) Rule 12(b). Once someone who holds an oath to protect, we the people as well as uphold the constitution steps outside their scope and authority of the constitution wages war against the constitution and deprives a man well as violating a man of those fundamental constitutional rights has lost all immunity.  It is very clear to see I the claimant have in fact have sufficient facts had made a real claim not a cognizable legal theory against the judicial wrongdoer(s).  Due to their Constitutional violations committed against the claimant the wrongdoer(s) are not entitled to the doctrine of absolute immunity.  This is especially true when the claimant has overwhelmingly showed that the wrongdoer(s) acted outside the scope and authority of their duties as well as acted under color of law.  In the complaint/claim, claimant stated the facts that are sufficient enough to "raise a right to relief above the speculative level…"**(127 S. Ct. @ 19664-65).**

In the complaint/claim, the presumption presented defined the element of the claimant's substantive cause of action.  Claimant argued that the wrongdoer(s) actions and orders clearly violated his right to Due Process.  At every hearing, claimant requested of the court to show where there was any sworn testimony under oath by a living man who in fact was a firsthand witness who had firsthand knowledge of any crimes, or violations of law committed by the claimant that warranted his child being removed from his custody/home.  When the claimant requested of the wrongdoer(s) to produce the evidence/testimony of a real claim that is under oath that warranted his child to being removed from his custody, the claimant(s) right to speak to

the record was ignored, I the claimant had even put in documents as seen in the claimant's evidence that the wrongdoer(s) had them removed from the record because the wrongdoer(s) did not know law just like wrongdoer(s) attorneys who are in fact not firsthand witness either there for cannot swear under oath and affirmation there for cannot be notice by the court of record. The claimant put the court of record on notice of the claimant's status of a state national with limited diplomatic immunity which was ignored by the wrongdoer(s). The wrongdoer(s) have no standing, the wrongdoer(s) side stepped the claimants request, proceeded with every hearing without ever producing one shred of evidence that a man came forward with a real claim that a man went on the stand that was a firsthand witness with firsthand knowledge that testified under oath and affirmation that warranted the removing of his child from his custody.  This action by the wrongdoer(s) was done under color of law, which violated Claimant(s) Due Process rights and denied him a fair impartial and unbiased trial with a common law court of record with a trial by jury.  With no evidence being brought forth other than a self-belated statements from social workers that work for a defacto private for-profit corporation that in fact have a clear motive to conspire as well as deprive parents as well as any their children of their god given rights. The only things that the wrongdoer(s) have brought to the court of record is Hearsay, presumption, and assumptions not facts that are backed by two firsthand witness that can testify under oath and affirmation that in fact a brough a real claim that was sworn in that I did something so bad that I do not deserve to have my bundle of joy that was a god given gift and not even be charged with a crime.  The report was not filed under any form of oath, nor was it submitted under penalty of perjury. Nor was it served properly. Thus, wrongdoer(s) malicious claim on this issue must fail and their request for dismissal should be denied in its entirety.

The violations of claimant's Due Process rights contained to be violated when the judicial wrongdoer(s) refused to be violated when the judicial wrongdoer(s) refused to allow claimant to present his evidence that there was no crime committed by him or the mother of the child, the claimant even openly challenged the jurisdiction of the court to speak to the court of record asking for a summary judgement based upon the truth and facts of the documents as well as the evidence presented by the claimant which was in fact was ignored by the wrongdoer(s). When the claimant had asked the wrongdoer(s) if the wrongdoer(s) derive their authority over me, my son, and the mother of my son based off parens patriae that was ignored as well. The wrongdoer(s) infringed on the claimants right to freedom of speech. without ever letting the

claimant present his claim to the baseless allegations of the case worker. Clearly, when a judge, who is supposed to be neutral, does not allow a man to present their claim then pursuant to the law, that judge violates a man(s) right to due process of the law. (see **Fourth, Fifth, Seventh, Ninth, and Fourteenth Constitutional Amendments, and Bill of Rights.** Claimant argues that his due process rights exceptional limitations over the states power clearly established broader substantive due process rights are held by any man the claimant is no different. Thus I as a man was to be free from the judicial Wrongdoer(s) subjection to any deprivation of his rights at the hands of third parties, like the case workers report that was not allowed to be challenged. Thus, claimant's procedural due process rights were violated, and the wrongdoer(s) cannot now claim absolute immunity due to the fact the wrongdoer(s) stepped out of their scope and authority, when the record shows claimant's procedural due process rights were severely violated by these wrongdoer(s). The actions of the wrongdoer(s) caused a severe deprivation of claimant's procedural due process rights making wrongdoer(s) arguments fail miserably. The specific allegations against the wrongdoer(s) shows that they both acted under color of law, violated claimant's rights when he was neither allowed to challenge evidence nor was allowed to bring a claim to the baseless false, malicious claims/allegations made against the claimant.

Claimant has a recognized right to a fair hearing which is secured by the **Ninth, Fourteenth Amendments Due Process Clause. (see Castellano v. Fragozo,** 352 F.3d 939, 942 (5th Cir. 2003). Hence, claimant has overcome the absolute and/or qualified immunity defense of the judicial wrongdoer(s) by amply showing and sufficiently pleading many instances where his Due Process rights were violated by the judicial wrongdoer(s). Also, the court of record in this case shows that the judicial wrongdoer(s) ignored potentially face or see any evidence that was in the form of sworn testimony and/or affidavits from any man who brought the claim that I did something so wrong I should get my god given child taken away without being charged with a crime. The power of the judicial wrongdoer(s) are expected to know the law and know when there dealing with a man not a citizen. There's no doubt that the judicial wrongdoer(s) must be considered an agent of the state and is therefore acting under color of state law. Claimant has overcome wrongdoer(s) arguments and this case should not be dismissed. In addition, a complaint/claim in this matter has been filed, the claims for relief have been made by the claimant, contrary to what the wrongdoer(s) attempted to argue, thus, pursuant to Federal Rules

of Civil Procedure the wrongdoer(s) are required procedurally to answer the complaint/claim. This court is without jurisdiction to even address a Rule 12(b) Motion to Dismiss especially in light of the claimant has sufficiently and overwhelmingly stated causes and claims as well as Constitutional violations that are grounds for relief to be granted. Thus, wrongdoer(s) arguments must fail in light of the claimant has correctly followed all Federal Rules of Procedure in the presentation of his complaint/claim.

Wrongdoer(s) counsel incorrectly stated that the FAC is fatally defective..." (mtn to dismiss @ 1:13). Due to the ineptness of Wrongdoer(s) counsel by he/she failing to adequately know the federal law and status the claimant has based his claims on, should not carry any weight simply because wrongdoer(s) counsel is not able to understand the federal law in which claimant has relied upon. Under United State Supreme Court ruling since governments have chosen to incorporate themselves then they must follow the same rules as any other corporations so what the wrongdoer(s) claiming as law are nothing more than corporate by laws set for the state employee and or officer of the corporation to follow, there is no excuse for the wrongdoer(s) counsel can't comprehend the lawful basis of the federal law relied upon by the claimant he/she should not be allowed as a grounds for a defense counsel stated that claimant's claims are "convoluted, confusing, and incomprehensible (1:15)

As stated above, just because the wrongdoer(s) counsel cannot understand the federal claims which claimant in fact has presented, the claimants claims should not be dismissed as a defense for dismissal. Claimant's claims are not barred by the Eleventh Amendments judicial immunity when it has been shown

that the wrongdoer(s) stepped out from the protection of the Eleventh Amendment. Thus, the doctrine of absolute judicial immunity does not apply, and wrongdoer(s) arguments must fail. Claimant has not attempted to bring criminal causes of actions rather he has presented constitutional claims that require further redress. Therefore, wrongdoer(s) claims to dismiss this action must fail.

Lastly, there are no defects that could not be cured by an amendment. Wrongdoer(s) arguments on this contention must also fail. Pursuant to the citing and precedent of the U.S. Supreme Court in **Haines v. Kerner,** are not to bed held to such a stringent standard as those of an experienced attorney. Also, the existence of a conspiracy can be proved through circumstantial evidence. (see **Adickes,** 398 U.S. @ 158), Since there is no count that the

wrongdoer(s) discussed and made conclusions on claimant's case with wrongdoer(s) counsel without the presence of the claimant it would be open to a trial by jury in light of the course of events that followed denying claimant to present evidence, a defense to the false malicious claim made in the case workers report to infer from the circumstances that the wrongdoer(s) had a meeting of the minds and thus reached an agreement to deprive the claimant's should be refused to present a defense, offer any evidence on his behalf, or be heard in open court as well as a court of record, clearly shows the existence of a conspiracy to deprive and put a lean on a man who has unalienable rights as is reflected in the court of record. Malice and corruption by the wrongdoer(s) is clearly supported by the court of record. Therefore, the motion to dismiss must be denied.

For the reasons stated above, judicial immunity cannot be a defense when the actions of the wrongdoer(s) did the claimants wrong and violated federally protected constitutional rights to Due Process of the law. It is also a fact that the wrongdoer(s) counsel made an argument that I got the law from the internet. It does not matter where the law comes from as long as it's the law as it is written it cannot be used an argument. Also the wrongdoer(s) left me with no choice but to serve them at their work when I had asked were the wrongdoer(s) lived the information was refused its also a fact that the process server I had serve the said documents made three attempts to serve the wrongdoer(s). so for any of the wrongdoer(s) to say no proper service was not done cannot be used as an argument either when the wrongdoer(s) withheld information. Just one more reason why the wrongdoer(s) motions should be denied. now comes point of law.

## Points of law

**Black law dictionary 5**[th]

All cases at law. Within constitutional guaranty of jury trial, refers to common law actions as distinguished from causes in equity and certain other proceedings. Breimhorst v. Beckman, 239 Minn. 409, 35 N.W.2d 719, 734

Common law actions are such as will lie, on the particular facts, at common law, without the aid of a statute. Actions are called, in common-law practice, ex contractu when they arise out of a contract. and ex delicto when they arise out of a tort. If a cause of action arises from a breach of promise, the action is "ex contractu". and, if it arises from breach of duty growing out of contract. it is "ex delicto".

Adjudicative facts. Factual matters concerning the parties to an administrative proceeding as contrasted with legislative facts which are general and usually do not touch individual questions of particular parties to a proceeding. Facts which concern a person's motives and intent, as contrasted with general policy issues. U. S. v. Bishop Processing Co., D.C.Md., 287 F.Supp. 624, 633

**Black laws 4ᵗʰ edition**

**CAPITE MINUTUS.** In the civil law. One who had suffered capitis diminutio, one who lost status or legal attributes. See Dig. 4, 5. **CAPITIS DIMINUTIO**. In Roman law. A diminishing or abridgment of personality; a loss or curtailment of a man's status or aggregate of legal attributes and qualifications. **CAPITIS DIMINUTIO MAXIMA**. The highest or most comprehensive loss of status. This occurred when a man's condition was changed from one of freedom to one of bondage, when he became a slave. It swept away with it all rights of citizenship and all family rights. **CAPITIS DIMINUTIO MEDIA**. A lesser or medium loss of status. This occurred where a man lost his rights of citizenship, but without losing his liberty. It carried away also the family rights. **CAPITIS DIMINUTIO MINIMA**. The lowest or least comprehensive degree of loss of status. This occurred where a man's family relations alone were changed. It happened upon the arrogation of a person who had been his own master, (sui juris,) or upon the emancipation of one who had been under the patria potestas. It left the rights of liberty and citizenship unaltered. See Inst. 1, 16, pr.; 1, 2, 3; Dig. 4, 5, 11; Mackeld.Rom.Law, § 144

**Social Security act of 1935 TITLE XI- GENERAL PROVISIONS DEFINITIONS (d) -**
Nothing in this Act shall be construed as authorizing any Federal official, agent, or

representative, in carrying out any of the provisions of this Act, to take charge of any child over the objection of either of the parents of such child, or of the person standing in loco parentis to such child.

**False Claims Act** - Liability The statute begins, in § 3729(a), by explaining the conduct that creates FCA liability. In very general terms, §§ 3729(a)(1)(A) and (B) set forth FCA liability for any person who knowingly submits a false claim to the government or causes another to submit a false claim to the government or knowingly makes a false record or statement to get a false claim paid by the government. Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly – not to get money from the government, but to avoid having to pay money to the government. Section 3729(a)(1)(C) creates liability for those who conspire to violate the FCA. Sections 3729(a)(1)(D), (E), and (F) are rarely invoked.

**USC TITLE 18 241 Conspiracy against rights** If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured— They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.
(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(a), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7018(a), (b)(1), Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(a), title XXXII, §§ 320103(a), 320201(a), title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(A), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)


**USC TITLE 18 242 Deprivation of rights under color of law** Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State,

Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(b), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7019, Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(b), title XXXII, §§ 320103(b), 320201(b), title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

Under 42 U.S.C. § 1983, I may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), I may sue federal officials for the violation of certain constitutional rights. These crimes carry penalties of $200,000.+ and up to 10 yrs prison for each count.

## Section 1983 – Action under Color of State Law Determining Whether a Private Person Conspired with a State Official

Cf. Thomas v. Zinkel, 155 F. Supp.2d 408, 412 (E.D.Pa. 2001) ("Liability of [local government] entities may not rest on respondent superior, but rather must be based upon a governmental policy, practice, or custom that caused the injury. . . . The same standard applies to a private corporation, like CPS, that is acting under color of state law."). This discussion assumes that the state official acts under color of state law when he commits the violation.

In appropriate cases, the existence of a conspiracy may also establish that a federal official was acting under color of state law. See Hindes v. F.D.I.C., 137 F.3d 148, 158 (3d Cir. 1998) ("[F]ederal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of state law, for example in conspiracy with state officials.").

If the private person hires the state official to do the act that constitutes the violation, and the state official agrees to be hired for that purpose, then this constitutes action under color of state law under the conspiracy theory. See Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998).

Cf., e.g., Horton v. City of Harrisburg, 2009 WL 2225386, at *5 (M.D.Pa. July 23, 2009) ("Supervisory liability under § 1983 utilizes the same standard as municipal liability. See Iqbal .... Therefore, a supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights.")

## Section 1983 – 2 Liability in Connection with the Actions of Another – 3 Municipalities – General Instruction

In addition to showing the existence of an official policy or custom, plaintiff must prove "that the municipal practice was the proximate cause of the injuries suffered." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id. (quoting City of Oklahoma City v. Tuttle,

471 U.S. 808, 823 (1985); and Estate of Bailey by Oare v. County of York, 768 F.2d 503, 507 (3d Cir.1985), overruled on other grounds by DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989)); see also Bielevicz, 915 F.2d at 851 (holding that "plaintiffs must simply establish a municipal custom coupled with causation – i.e., that

policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury"); Carswell v. Borough of Homestead, 381 F.3d 27 235, 244 (3d Cir. 2004) ("There must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'") (quoting Brown v. Muhlenberg Township, 269 F.3d 205, 214 (3d Cir. 2001) (quoting Canton, 489 U.S. at 385)). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." Bielevicz, 915 F.2d at 851. "A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)); see also A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 582 (3d Cir. 2004) ("The deficiency of a municipality's training program must be closely related to the plaintiff's ultimate injuries.")..

**The Declaration of Independence -** When in the Course of human Events, it becomes necessary for one People to dissolve the Political Bands which have connected them with another, and to assume among the Powers of the Earth, the separate and equal Station to which the Laws of Nature and of Nature's God entitle them, a decent Respect to the Opinions of Mankind requires that they should declare the causes which impel them to the Separation. We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness— That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed, that whenever any form of Government becomes destructive of these Ends, it is the Right of the People to alter or to abolish it

**LAW OF THE LAND** – The general misconception is that any pearance of law constitutes the law of the land. The U.S Constitution is the supreme law of the land, and any statue, to be valid, must be in agreement. It is impossible for a law which violates the Constitution to be valid. This is succinctly stated as follows: "All laws which are repugnant to the Constitution are null and void." *Marybury vs. Madison, 5 US (2 Cranch) 137, 174, 176, (1803*

**Section 1983 – Liability in Connection with the Actions of Another Municipalities – Custom**

**Government officials** performing discretionary functions are immune from suit if their conduct does not violate clearly established constitutional rights of which a reasonable person would know. *Harlow v. Fitzgerald, 457 U.S. 800 (1982).*

### Section 1983 – Affirmative Defenses – 2 Conduct Not Covered by Absolute Immunity

that a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing" were "protected by absolute immunity"). Moreover, "supervision or training or information-system management" activities can qualify for absolute immunity – even though such acts are administrative in nature – if the administrative action in question "is directly connected with the conduct of a trial." Van De Kamp v. Goldstein, 129 S. Ct. 6 855, 861-62 (2009); see id. at 858-59 (holding that absolute immunity "extends to claims that the prosecution failed to disclose impeachment material ... due to: (1) a failure properly to train prosecutors, (2) a failure properly to supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants"). Absolute immunity does not apply, however, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," Buckley, 509 U.S. at 273, or when a prosecutor "provid[es] legal advice to the police," Burns, 500 U.S. at 492, 496.82 12 82

See also Kalina v. Fletcher, 522 U.S. 118, 120, 131 (1997) (prosecutor lacked absolute immunity from claim asserting that she "ma[de] false statements of fact in an affidavit supporting an application for an arrest warrant," because in so doing she "performed the function of a complaining witness" rather than that of an advocate); Reitz v. County of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) (holding that "absolute immunity covers a prosecutor's actions in (1) creating and filing of an in rem complaint; (2) preparing of and applying for the seizure warrant; and (3) participating in ex parte hearing for the issuance of the seizure warrant," but does not cover prosecutor's "conduct with respect to the management and retention of the property after the seizure, hearing, and trial").

In Odd v. Malone, 538 F.3d 202 (3d Cir. 2008), "prosecuting attorneys obtained bench warrants to detain material witnesses whose testimony was vital to murder prosecutions. Although the attorneys diligently obtained the warrants, they neglected to keep the courts informed of the progress of the criminal proceedings and the custodial status of the witnesses."Id. at 205. The

Court of Appeals held that a prosecutor sued "for failing to notify the relevant authorities that the proceedings in which the detained individual was to testify had been continued for nearly four months," id., did not qualify for absolute prosecutorial immunity; the court based this holding on the facts of the case, including the fact that the judge who issued the material witness warrant had directed the prosecutor to notify him of any delays in the murder prosecution but the prosecutor had failed to do so. Id. at 212-13. The Odd court also held (a fortiori) that a different prosecutor sued "for failing to notify the relevant authorities that the material witness remained incarcerated after the case in which he was to testify had been dismissed," id. at 205, lacked absolute prosecutorial immunity. See id. at 215. In Schneyder v. Smith, 653 F.3d 313 (3d Cir. 2011), the Court of Appeals on a subsequent appeal adhered to its ruling that the prosecutor who allegedly failed to inform the court of the trial continuance lacked absolute immunity, see id. at 333-34. The Schneyder court reasoned that its ruling in Odd was consistent with the Supreme Court's subsequent decision in Van de Kamp v. Goldstein, 129 S. Ct. 855 (2009). Under Van de Kamp, "some administrative functions relate directly to the 4.7.1 Section 1983 – Conduct Not Covered by Absolute Immunity Judges possess absolute immunity from damages liability for "acts committed within their judicial jurisdiction." Pierson v. Ray, 386 U.S. 547, 554 (1967).83 2 "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978). 84 Judges do not possess absolute immunity with respect to claims arising from "the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."Forrester v. White, 484 U.S. 219, 227 (1988).

**4.12.3 Section 1983 – Unlawful Seizure – Arrest – Warrant Application** - any subsequent detention implicates the tort of malicious prosecution. See id. at 1096. The Wallace Court did not, however, indicate how this classification would affect the elements of a claim for unlawful seizure pursuant to a warrant. See id. at 1096 n.2 ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, see Albright v. Oliver, 510 U.S. 266, 270-271, 275 (1994) (plurality opinion), and we do not do so here."). Malicious prosecution claims in general are discussed below in Comment 4.13. If the officer making an affidavit in support of an arrest warrant application includes "a false statement knowingly and intentionally, or with reckless disregard for the truth," and if, without that false statement, the

application would not suffice to establish probable cause, then the warrant is invalid. Franks v. Delaware, 438 U.S. 154, 155-56 (1978).236 11 "This does not mean . . . that every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." Id. at 165. "[A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997)); see also Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000).237

236 A modified version of this instruction could be used with respect to search warrants. For an opinion applying the Franks test in the context of a search warrant application, see United States v. Pavulak, 700 F.3d 651 (3d Cir. 2012). In Pavulak, the court held that the affidavit submitted in support of a search warrant application "was insufficient to establish probable cause for child pornography," but that "because the officers reasonably relied on the warrants in good faith, … the District Court properly denied suppression." Id. at 655. The court then held that the district court properly denied the defendant's request for a Franks hearing. See id. at 665-66 (reasoning that affidavit's omission of dates of conduct underlying prior convictions was irrelevant because the convictions themselves did not help to establish probable cause that defendant had been viewing child pornography, and that affidavit's misstatement of the address where the defendant assertedly viewed child pornography was immaterial under the circumstances).

237 In Wilson, the plaintiff contended "that even if the statements are not material, he should at least get nominal damages for [the defendant's] failure to provide the judge with exculpatory information," but the court refused to address this argument because it was not timely raised. See Wilson, 212 F.3d at 789 n.6.

"Proof of negligence or innocent mistake is insufficient." Lippay v. Christos, 996 F.2d 2 1490, 1501 (3d Cir. 1993); see Franks, 438 U.S. at 171. In addition, when a government affiant includes information provided by another government agency pursuant to a court order, the

Franks standard becomes harder to meet because "government agents should generally be able to presume that information received from a sister governmental agency is accurate." U.S. v. Yusuf, 461 F.3d 374, 378 (3d Cir. 2006).238 On the other hand, "the police cannot insulate a deliberate falsehood from a Franks inquiry simply by laundering the falsehood through an unwitting affiant who is ignorant of the falsehood." U.S. v. Shields, 458 F.3d 269, 276 (3d Cir. 2006).239 Shields and Yusuf might at first glance seem to be in tension, but they can be reconciled by

238 The Yusuf court held that when information provided by a sister government agency under court order turns out to be false, [t]o demonstrate that a government official acted recklessly in relying upon such information, a defendant must first show that the information would have put a reasonable official on notice that further investigation was required. If so, a defendant may establish that the officer acted recklessly by submitting evidence: (1) of a systemic failure on the agency's part to produce accurate information upon request; or (2) that the officer's particular investigation into possibly inaccurate information should have given the officer an obvious reason to doubt the accuracy of the information. Yusuf, 461 F.3d at 378. The Court of Appeals noted that this alternative holding was ultimately "inconsequential" to the outcome of the case, because even if the affidavit were reformulated to exclude the challenged portions, "[t]he reformulated affidavit clearly establishes probable cause to authorize the search warrants." Id. at 388.

239 In Shields, an undercover FBI agent subscribed to a website in the course of his investigation of online child pornography. See Shields, 458 F.3d at 270-71. That agent distributed to other agents a template containing information for use in prosecuting child pornography cases; the template asserted that all those who joined the website in question were automatically subscribed to a particular email list, by means of which child pornography was distributed. See id. at 271-72. A second FBI agent incorporated this assertion into an affidavit in support of a search warrant application in connection with his investigation of Shields. See id. at

272-73. It was subsequently discovered that the assertion concerning automatic subscription was false. See id. at 274-75. The Shields court, however, rejected Shields' challenge to the warrant, because the court held that the affidavit "even purged of the offending material supports a finding of probable cause," id. at 277; thus, Shields' discussion of laundering a falsehood through an unwitting affiant is dictum. focusing on whether each case involved a danger that

government investigators colluded to launder a falsehood through an unwitting government affiant. In Yusuf, the problem with the federal government's warrant application stemmed from erroneous information provided by the Virgin Islands Bureau of Internal Revenue, which produced the information pursuant to a court order rather than as part of a program of cooperation with the federal authorities. The Court of Appeals stressed that VIBIR did not disclose United's tax records voluntarily, but rather was required to do so because of an independent court order. This fact is important, as it detracts from any possible allegations that VIBIR and the FBI colluded to produce false information in the affidavit. Nor did VIBIR initiate the investigation with the FBI, which helps allay concerns that VIBIR deliberately provided false information to the FBI to cover up bad faith or improper motive. 461 F.3d at 387; see also id. at 396 (emphasizing the need to avoid "invit[ing] collusion among different agencies to insulate deliberate misstatements"). The reckless disregard standard applies differently to omissions than to affirmative statements: "(1) omissions are made with reckless disregard for the truth when an officer recklessly 20 omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Wilson, 212 F.3d at 783; see also Lippay, 996 F.2d at 1501 (to show reckless disregard, plaintiff must prove that defendant "made the statements in his affidavits 'with [a] high degree of awareness of their probable falsity'" (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964))); United States v. Brown, 631 F.3d 638, 650 (3d Cir. 2011) (finding no clear error in district court's finding that federal agent who prepared affidavit in support of warrant application based on conversation with state trooper about trooper's investigation acted with reckless disregard when he included a paragraph in the affidavit that lacked any support in the fruits of the trooper's investigation). "To determine the materiality of the misstatements and omissions," the decisionmaker must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789 (quoting Sherwood, 113 F.3d at 400); see also Reedy v. Evanson, 615 F.3d 197, 211-23 (3d Cir. 2010) (applying this test). "[A] mistakenly issued or executed warrant cannot provide probable cause for an arrest," even if the arrest is carried out by an officer other than the one who obtained the warrant. Berg v. County of Allegheny, 219 F.3d 261, 270 (3d Cir. 2000). As the Supreme Court has explained, although "police officers called upon to aid other officers in executing arrest

warrants are entitled to assume" that the warrant application contained a showing of probable cause, "[w]here . . . the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." Whiteley v. 1 Warden, 401 U.S. 560, 568 (1971); see also Berg, 219 F.3d at 270 (quoting Whiteley). However, qualified immunity may protect an officer who relied on the existence of a warrant. See Malley v. Briggs, 475 U.S. 335, 343 (1986). An officer who obtained a warrant "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341; see also Messerschmidt v. Millender, 132 S. Ct. 1235, 1245, 1249 (2012) (holding that in light of magistrate's issuance of warrant, defendant officers were entitled to qualified immunity unless their reliance on the warrant was "plainly incompetent" or "entirely unreasonable").

240 Thus, the qualified immunity question "is whether a reasonably well trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley, 475 U.S. at 345; see also Messerschmidt, 132 S. Ct. at 1248 n.6 (stressing objective nature of inquiry and upholding qualified immunity with respect to officer's reliance on warrant authorizing search for gang-related items in part because the facts that the officer included in the warrant application supported an inference that the suspect's attack on his girlfriend was gangrelated – despite the officer's later testimony that he did not believe the crime was gang-related).

241 Similarly, if an officer makes an arrest based upon a warrant obtained by another officer, qualified immunity will protect the arresting officer if he acted "based on an objectively reasonable belief that" the warrant was valid; but "an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances." Berg, 219 F.3d at 273.

240 In Messerschmidt, the Court gave weight – in its qualified immunity analysis – to "the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the magistrate." Messerschmidt, 132 S. Ct. at 1249. Cf. Kelly v. Borough of Carlisle, 622 F.3d 248, 255-56 (3d Cir. 2010). (holding that "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted

under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause," but that "a plaintiff may rebut this presumption by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice").

241 The Court of Appeals has held that if that if the reckless disregard standard (discussed above) is met then the defendant is foreclosed from establishing qualified immunity: "If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established." Lippay, 996 F.2d at 1504. For a discussion of related considerations, see Comment 4.7.2. In Malley, the trial court had ruled that "the act of the judge in issuing the arrest warrants for respondents broke the causal chain between petitioner's filing of a complaint and respondents' arrest." Malley, 475 U.S. at 339. Although the defendants did not press this argument before the Supreme Court, the Court noted in a footnote its rejection of the rationale: It should be clear . . . that the District Court's "no causation" rationale in this case is inconsistent with our interpretation of § 1983. As we stated in Monroe v. Pape, 365 U.S. 167, 187 . . . (1961), § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link. Malley, 475 U.S. at 345 n.7. The Court of Appeals has given this language a narrow interpretation: To the extent that the common law recognized the causal link between a complaint and the ensuing arrest, it was in the situation where "misdirection" by omission or commission perpetuated the original wrongful behavior. . . . If, however, there had been an independent exercise of judicial review, that judicial action was a superseding cause that by its intervention prevented the original actor from being liable for the harm. . . . Thus, the cryptic reference to the common law in Malley' s footnote would appear to preclude judicial action as a superseding cause only in the situation in which the information, submitted to the judge, was deceptive. Egervary v. Young, 366 F.3d 238, 248 (3d Cir. 2004). Egervary's interpretation of Malley's dictum is questionable, because the Supreme Court's description of the defendants' conduct in Malley includes no suggestion that they submitted deceptive information. In addition, more recent precedent confirms that an officer can be liable for executing a defective search warrant, even where there was no allegation of deception in the warrant application. In Groh v.

Ramirez, the defendant executed a search pursuant to a warrant that "failed to identify any of the items that petitioner intended to seize" (though the warrant application had described those items with particularity). Groh v. Ramirez, 540 U.S. 551, 554 (2004). The lack of particularity rendered the warrant "plainly invalid." Id. at 557. The Court rejected the defendant's "argument that any constitutional error was committed by the Magistrate, not petitioner," explaining that the defendant "did not alert the Magistrate to the defect in the warrant that petitioner had drafted, and we therefore cannot know whether the Magistrate was aware of the scope of the search he was authorizing. Nor would it have been reasonable for petitioner to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency." Id. at 561 n.4. Having held it "incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted," id. at 563, the Court denied the defendant qualified immunity because "even a cursory reading of the warrant in this case –perhaps just a simple glance – would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal," id. at 564. Thus, though Egervary seems to indicate that the supervening cause doctrine applies when an officer obtains a warrant (unless the warrant application contains misleading information), Egervary's approach appears to be in some tension with Supreme Court precedent.

242 In any event, Instruction 4.12.3 is designed for use in cases where the plaintiff asserts that the warrant application contained material falsehoods or omissions. Unlike a person arrested without a warrant, "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker v. McCollan, 443 U.S. 137, 143 (1979); see id. at 145 (assuming, "arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain  amount of time deprive the accused of 'liberty . . . without due process,'" but holding that "a detention of three days over a New Year's weekend does not and could not amount to such a deprivation").

242 An additional Court of Appeals decision, though, seemed to rely on a magistrate's review of a warrant application as evidence that the officer did not err in seeking the warrant: In Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007), when the court held that the later dismissal of a charge

as time-barred does not show that the officer lacked probable cause to obtain an arrest warrant, the court also noted that "the dates of the offenses were disclosed in the affidavit of probable cause that was submitted to the magistrate," and that "[t]here is no indication that the magistrate had any hesitancy about issuing the arrest warrant." See id. at 269-70

Section 1983 – Duty to Protect Child in Foster Care - "[W]hen the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983." Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2000) (en banc). However, "compulsory school attendance laws and the concomitant in loco parentis authority and discretion that schools necessarily exercise over students" do not give rise to a "special relationship," even in a sympathetic case where a violent bully subject to two restraining orders assaults other students. Morrow v. Balaski, 719 F.3d 160, 170-72 (3d Cir. 2013) (en banc) (but noting that "a school's exercise of authority to lock classrooms in the wake of tragedies . . . may be a relevant factor in determining whether a special relationship or state-created danger exists in those specific cases"). The culpability requirement in such a "special relationship" case is governed by the framework set forth in County of Sacramento v. Lewis, 523 U.S. 833 (1998). See Nicini, 212 F.3d at 809.292 16 Under that framework, the plaintiff must show that the defendant's conduct "shocked the conscience"; the precise level of culpability required will vary depending on the circumstances, and especially on the availability (or not) of the opportunity for the defendant to deliberate before acting. See id. at 810. In Nicini, the Court of Appeals applied a "deliberate indifference" standard. See id. at 811 ("In the context of this case . . . Cyrus's actions in investigating the Morra homeshould be judged under the deliberate indifference standard.").293 21 The Nicini court did not,from the Eighth Amendment standard discussed in Farmer v. Brennan, 511 U.S. 825 (1994). As discussed in the Comment, Third Circuit precedent leaves open the possibility that a plaintiff could establish liability for failure to protect a child in foster care under an objective deliberate indifference standard. If the objective standard applies, then this paragraph must be redrafted accordingly.

292 Some district court decisions within the Third Circuit have recognized an alternative theory of liability: Under the "'professional judgment' standard . . . ., defendants could be held liable if their actions were 'such a substantial departure from accepted professional judgment, practice, or

standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999) (quoting Wendy H. v. City of Philadelphia, 849 F. Supp. 367, 372 (E.D. Pa. 1994) (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982))). The Court of Appeals in Nicini declined to "decide whether, consistent with Lewis, [the professional judgment] standard could be applied to" substantive due process claims for failure to protect a child in foster care. Nicini, 212 F.3d at 811 n. 9.

293 Compare Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[A] social worker acting to separate parent and child . . . . rarely will have the luxury of proceeding however, decide whether this "deliberate indifference" standard should follow the subjective "deliberate indifference" standard applied to prisoners' Eighth Amendment claims, see Nicini, 212 F.3d at 811 (citing Farmer v. Brennan, 511 U.S. 825 (1994)),294 3 or whether a defendant's "failure to act in light of a risk of which the official should have known, as opposed to failure to act in light of an actually known risk, constitutes deliberately indifferent conduct in this setting," because under either standard the court held the plaintiff's claim should fail, see Nicini, 212 F.3d at 812 (holding that defendant's conduct "amounted, at most, to negligence"). in a deliberate fashion . . . . As a result, . . . the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"); B.S. v. Somerset County, 704 F.3d 250, 267-68 (3d Cir. 2013) (applying Miller and holding that child welfare worker's actions in obtaining court order and removing daughter from mother's custody did not "shock the conscience"); Mulholland v. Government County of Berks, 706 F.3d 227, 234, 241-44 (3d Cir. 2013) (applying Miller and finding no conscience-shocking behavior by county agency in removal of plaintiffs' children and grandchild or in assertion during administrative appeal that Mulholland's status "should be changed from 'indicated' perpetrator [of child abuse] to 'founded' perpetrator").

294 For a discussion of this standard, see the Comment to Instruction 4.11, supra. A number of circuits have adopted a subjective standard. See, e.g., Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services, 380 F.3d 872, 882 (5th Cir. 2004) ("[T]he central inquiry for a determination of deliberate indifference must be whether the state social workers were aware of facts from which the inference could be drawn, that placing children in the Clauds foster home created a substantial risk of danger."); Lewis v. Anderson, 308 F.3d 768, 775-76

(7th Cir. 2002) ("If state actors are to be held liable for the abuse perpetrated by a screened foster parent, under K.H. the plaintiffs must present evidence that the state officials knew or suspected that abuse was occurring or likely."); Ray v. Foltz, 370 F.3d 1079, 1083-84 (11th Cir. 2004) (issue is whether "defendants had actual knowledge or deliberately failed to learn of the serious risk to R.M. of the sort of injuries he ultimately sustained").

**Section 1983 – Duty to Protect Child in Foster Care** - "[W]hen the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983." Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2000) (en banc). However, "compulsory school attendance laws and the concomitant in loco parentis authority and discretion that schools necessarily exercise over students" do not give rise to a "special relationship," even in a sympathetic case where a violent bully subject to two restraining orders assaults other students. Morrow v. Balaski, 719 F.3d 160, 170-72 (3d Cir. 2013) (en banc) (but noting that "a school's exercise of authority to lock classrooms in the wake of tragedies . . . may be a relevant factor in determining whether a special relationship or state-created danger exists in those specific cases"). The culpability requirement in such a "special relationship" case is governed by the framework set forth in County of Sacramento v. Lewis, 523 U.S. 833 (1998). See Nicini, 212 F.3d at 809.292 16 Under that framework, the plaintiff must show that the defendant's conduct "shocked the conscience"; the precise level of culpability required will vary depending on the circumstances, and especially on the availability (or not) of the opportunity for the defendant to deliberate before acting. See id. at 810. In Nicini, the Court of Appeals applied a "deliberate indifference" standard. See id. at 811 ("In the context of this case . . . Cyrus's actions in investigating the Morra homeshould be judged under the deliberate indifference standard.").293 21 The Nicini court did not,from the Eighth Amendment standard discussed in Farmer v. Brennan, 511 U.S. 825 (1994). As discussed in the Comment, Third Circuit precedent leaves open the possibility that a plaintiff could establish liability for failure to protect a child in foster care under an objective deliberate indifference standard. If the objective standard applies, then this paragraph must be redrafted accordingly.

292 Some district court decisions within the Third Circuit have recognized an alternative theory of liability: Under the "'professional judgment' standard . . . . , defendants could be held liable if

their actions were 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999) (quoting Wendy H. v. City of Philadelphia, 849 F. Supp. 367, 372 (E.D. Pa. 1994) (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982))). The Court of Appeals in Nicini declined to "decide whether, consistent with Lewis, [the professional judgment] standard could be applied to" substantive due process claims for failure to protect a child in foster care. Nicini, 212 F.3d at 811 n. 9.

293 Compare Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[A] social worker acting to separate parent and child . . . . rarely will have the luxury of proceeding however, decide whether this "deliberate indifference" standard should follow the subjective "deliberate indifference" standard applied to prisoners' Eighth Amendment claims, see Nicini, 212 F.3d at 811 (citing Farmer v. Brennan, 511 U.S. 825 (1994)),294 3 or whether a defendant's "failure to act in light of a risk of which the official should have known, as opposed to failure to act in light of an actually known risk, constitutes deliberately indifferent conduct in this setting," because under either standard the court held the plaintiff's claim should fail, see Nicini, 212 F.3d at 812 (holding that defendant's conduct "amounted, at most, to negligence"). in a deliberate fashion . . . . As a result, . . . the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"); B.S. v. Somerset County, 704 F.3d 250, 267-68 (3d Cir. 2013) (applying Miller and holding that child welfare worker's actions in obtaining court order and removing daughter from mother's custody did not "shock the conscience"); Mulholland v. Government County of Berks, 706 F.3d 227, 234, 241-44 (3d Cir. 2013) (applying Miller and finding no conscience-shocking behavior by county agency in removal of plaintiffs' children and grandchild or in assertion during administrative appeal that Mulholland's status "should be changed from 'indicated' perpetrator [of child abuse] to 'founded' perpetrator").

294 For a discussion of this standard, see the Comment to Instruction 4.11, supra. A number of circuits have adopted a subjective standard. See, e.g., Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services, 380 F.3d 872, 882 (5th Cir. 2004) ("[T]he central inquiry for a determination of deliberate indifference must be whether the state social workers were aware of facts from which the inference could be drawn, that placing children in the Clauds

foster home created a substantial risk of danger."); Lewis v. Anderson, 308 F.3d 768, 775-76 (7th Cir. 2002) ("If state actors are to be held liable for the abuse perpetrated by a screened foster parent, under K.H. the plaintiffs must present evidence that the state officials knew or suspected that abuse was occurring or likely."); Ray v. Foltz, 370 F.3d 1079, 1083-84 (11th Cir. 2004) (issue is whether "defendants had actual knowledge or deliberately failed to learn of the serious risk to R.M. of the sort of injuries he ultimately sustained").

## Cestui Que Vie act of 1666

[I.] Cestui que vie remaining beyond Sea for Seven Years together and no Proof of their Lives, Judge in Action to direct a Verdict as though Cestui que vie were dead. If such person or persons for whose life or lives such Estates have beene or shall be granted as aforesaid shall remaine beyond the Seas or elsewhere absent themselves in this Realme by the space of seaven yeares together and noe sufficient and evident proofe be made of the lives of such person or persons respectively in any Action commenced for recovery of such Tenements by the Lessors or Reversioners in every such case the person or persons upon whose life or lives such Estate depended shall be accounted as naturally dead, And in every Action brought for the recovery of the said Tenements by the Lessors or Reversioners their Heires or Assignes, the Judges before whom such Action shall be brought shall direct the Jury to give their Verdict as if the person soe remaining beyond the Seas or otherwise absenting himself were dead

**The 14th Amendment to the U.S. Constitution**, ratified in 1868, granted citizenship to all persons born or naturalized in the United States—including former enslaved people—and guaranteed all citizens "equal protection of the laws."

**18 USC Ch. 81: PIRACY AND PRIVATEERING -** §1659. Attack to plunder vessel Whoever, upon the high seas or other waters within the admiralty and maritime jurisdiction of the United States, by surprise or open force, maliciously attacks or sets upon any vessel belonging to another, with an intent unlawfully to plunder the same, or to despoil any owner thereof of any moneys, goods, or merchandise laden on board thereof, shall be fined under this title or

imprisoned not more than ten years, or both. (June 25, 1948, ch. 645, 62 Stat. 775; Pub. L. 103–322, title XXXIII, §330016(1)(K), Sept. 13, 1994, 108 Stat. 2147.) Based on title 18, U.S.C., 1940 ed., §489 (Mar. 4, 1909, ch. 321, §298, 35 Stat. 1147). Mandatory punishment provisions were rephrased in the alternative. §1661. Robbery ashore Whoever, being engaged in any piratical cruise or enterprise, or being of the crew of any piratical vessel, lands from such vessel and commits robbery on shore, is a pirate, and shall be imprisoned for life. (June 25, 1948, ch. 645, 62 Stat. 775.)

**Definition of code**

**Code** - n. a collection of written laws gathered together, usually covering specific subject matter. Thus, a state may have a civil code, corporations code, education code, evidence code, health and safety codes, insurance code, labor code, motor vehicle code, penal code, revenue and taxation code, and so forth. Federal statutes which deal with legal matters are grouped together in codes. There are also statutes which are not codified. Despite their apparent permanence, codes are constantly being amended by legislative bodies. Some codes are administrative and have the force of law even though they were created and adopted by regulatory agencies and are not actually statutes or laws.

## CONCLUSION

Absolute immunity only defeats a suit at the onset, provided the officials/judges actions were well within the scope of the immunity. The circumstances and motivations of the wrongdoer(s) actions must be allowed to be established by the evidence of the record. These wrongdoer(s) used their personal judgment in performing their acts which violated claimant(s) constitutional rights. In their ministerial role, the judicial defendants were required by law to perform certain acts in specific ways. This was not the case in plaintiff's hearings and the record supports his contentions. Here, the wrongdoer(s) did not act within their discretionary powers, nor had they any subject matter jurisdiction over the case, thus, they are not immune from civil liability, especially when the record shows the judges acts were based on malicious and corrupt

motives to strip the claimant's child away from him without any sworn testimony or evidence.

These acts violated claimant's rights to Due Process and now requires a redress of those

violations complained of herein.  (see **Pierson v. Ray**, 386 U.S. 547 (19667) **(statutory cause of**

**action under** **42 U.S.C. sec. 1983 (1970) for deprivation of civil rights**).  The violations of

claimant's constitutional rights does not shield the judicial defendants with absolute immunity.

(see **Tenney v. Brandhove**, 341 U.S. 367, 71 S. Ct. 783, 95 L. Ed. 1019).

**What Is an Affidavit and When are They Used?** In a nutshell, an affidavit is a sworn
statement that is in writing. Affidavits are usually used in a court or in negotiations. They are
common in family law cases and bankruptcy cases. They are also used in civil and criminal
cases, though not as often as family or bankruptcy law cases. They must be notarized and you
must swear that the facts contained in an affidavit are true and correct. When you notarize an
affidavit, you must also sign it in front of witnesses. Generally, banks will notarize affidavits and
other documents for you and will provide witnesses.

So I the claimant John Joseph Whittington the executor/beneficiary of the VESSEL of JOHN
JOSEPH WHITTINGTON JR and JOSEPH CARSON WHITTINGTON, I am also the fiduciary
of JOSEPH CARSON WHITTINGTON Has not got any real claim from any man that is in fact
a firsthand witness with firsthand knowledge that can testified under oath and affirmation as well
under the penalty of perjury that I did something so bad I deserved to have Joseph Carson
Whittington taken from me without even being charged with a crime. Its also a fact when the
jurisdiction was challenged the wrongdoer(s) had also violated my freedom of speech and my
right to speak to the record. I have provided many reasons why the wrongdoer(s) have no
immunities. I can also raise the point that when I had asked were the wrongdoer(s) place of
living the wrongdoer(s) refused to tell me that information. It matters not if said person is a
county worker, public official, and public servant they work for we the people and are entitled to
this information. Therefore, withholding vital information for me to serve them at their home.
But this doesn't matter as the wrongdoer(s) have waved there right to service. With this many
reasons the wrongdoer(s) motion must be denied in its entirety.

Lawful claim, lawfully filed, and lawfully present to all parties involved.

Autograph: _____       Date: 09-16-2021

*A living man John Joseph Whittington*

**Document type | affidavit of truth | by a living man John Joseph Whittington | total pages 28**

Date: _09-16-2021_

Legatus Non Violatur, Without Prejudice, Non Assumptsit All Rights Reserved.
A living man John Joseph Whittington Jr executor/beneficiary of — the VESSEL

**Autograph:** _____
**A living man John Joseph Whittington**

**Witness:** _____

_California_ **State**

_San Diego_ **County**

**The United States of America**

On _September 16, 2021_ date before

me, _Ricardo Antonio Gutierrez_ a Notary Public, personally

appeared in front of _John Joseph Whittington_ who

proved to me on the basis of satisfactory evidence to be the man/ woman whose Name is

subscribed to the within attached instrument and acknowledged to Me that he/she executed

the same in his authorized capacity, And that by his/her autograph(s) on the instrument the

man/woman executed, the instrument known as Affidavit of Truth . I certify under

PENALTY OF PERJURY under the lawful laws of _California_ State that the

foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ of Notary / Jurat seal

RICARDO ANTONIO GUTIERREZ
COMM. # 2271788
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires DECEMBER 18, 2022

Document type | **affidavit of truth** | by a living man John Joseph Whittington | total pages 28

**Notice to agents is notice to principals, notice to principals is notice to agent.**

**This part was purposely left blank**

**Comes Now the official seal of the Whittington family as well as the civil flag of peace**

**Document type | affidavit of truth | by a living man John Joseph Whittington | total pages 28**